## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANTEL HATTON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| PEOPLESHARE PROFESSIONAL, | : | PLAINTIFF DEMANDS A TRIAL BY |
| LLC; TOTAL SCOPE, INC.; MARY | : | JURY |
| BURCHETT (individually); and | : | |
| JORDAN MARTIN (individually) | : | |
| | : | |
| Defendants. | : | |

Plaintiff, CHANTEL HATTON, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants TOTAL SCOPE, INC., PEOPLESHARE PROFESSIONAL, LLC, MARY BURCHETT (individually) and JORDAN MARTIN (individually) (collectively "Defendants") and avers the following:

### PARTIES

1.  PLAINTIFF CHANTEL HATTON (hereinafter also referred to as "PLAINTIFF") is an African American female who is a resident of the Commonwealth of Pennsylvania.

2.  At all times material, Defendant, PEOPLESHARE PROFESSIONAL, LLC (hereinafter also referred to as "Defendant PS"), was and still is a foreign corporation organized and existing by virtue of the laws of the Commonwealth of Delaware with a place of business located at 100 Springhouse Dr., Suite 200, Collegeville, PA 19426.

3.  At all times material, Defendant, TOTAL SCOPE, INC. (hereinafter also referred to as "Defendant TS"), was and still is a foreign corporation organized and existing by virtue of the laws of the Commonwealth of Delaware with a place of business located at 17 Creek Parkway, Upper Chichester, PA 19061.

4. Defendant, MARY BURCHETT (hereinafter also referred to as "DEFENDANT BURCHET") is a Caucasian individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 100 Springhouse Dr., Suite 200, Collegeville, PA 19426.

5. At all times material, Defendant BURCHETT was employed as a Recruiter for Defendant PS.

6. At all times material, Defendant BURCHETT maintained supervisory authority over PLAINTIFF.

7. Defendant, JORDAN MARTIN (hereinafter also referred to as "DEFENDANT MARTIN") is a Caucasian individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 17 Creek Parkway, Upper Chichester, PA 19061.

8. At all times material, Defendant MARTIN was employed as Manager for Defendant TS.

9. At all times material, Defendant MARTIN maintained supervisory authority over PLAINTIFF.

10. At all times relevant to this civil action Defendants were PLAINTIFF's joint and sole employers.

## NATURE OF THE CASE

11. This is an action for damages and other relief pursuant to Section 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"); and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being subjected to discrimination, retaliation, and wrongful termination by the aforementioned Defendants.

12. Furthermore, this action is to redress the Defendants' unlawful employment practices against PLAINTIFF, including Defendants' unlawful discrimination against PLAINTIFF because of her race and for Defendants' wrongful actions against PLAINTIFF leading up to, and including, her unlawful termination.

13. PLAINTIFF seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post-judgment interest as remedies for Defendants' violations of her rights.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

15. This Court has jurisdiction in that this action involves a Federal Question under Title VII of the Civil Rights Act of 1964.

16. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

17. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statue, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

18. Venue is proper in the Eastern District of Pennsylvania based upon Defendants' residency and that a substantial part of the events or omissions giving rise to the claims occurred within

Delaware County in the Commonwealth of Pennsylvania in the Eastern District of Pennsylvania. 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19. On or around December 27, 2021, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

20. PLAINTIFF's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

21. On or about July 5, 2022, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

22. This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

23. PLAINTIFF has complied with all administrative prerequisite requirements.

24. PLAINTIFF's PHRA claims are still pending before the PHRC because less than one year has elapsed since PLAINTIFF filed her PHRA claims.

25. PLAINTIFF will seek to amend her complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

## MATERIAL FACTS

26. Around July 2021, PLAINTIFF interviewed with Defendant BURCHETT of Defendant PS, a staffing agency.

27. Around August 2021, Defendant BURCHETT assigned PLAINTIFF to work for Defendant TS.

28. Around August 2021, PLAINTIFF was hired by Defendant TS as an Operations Specialist.

29. Almost immediately after PLAINTIFF was hired, Defendant MARTIN subjected PLAINTIFF to pervasive discrimination and harassment in the workplace due to her race.

30. For example, and by no means an exhaustive list, Defendant MARTIN wore gloves every time he visited PLAINTIFF's workstation, but would not wear gloves when approaching similarly situated Caucasian employees.

31. Additionally, Defendant MARTIN refused to permit PLAINTIFF to use gloves from the communal glove box, yet similarly situated Caucasian employees were permitted to take gloves from the glove box.

32. On a regular basis, Defendant MARTIN bragged about having his license to carry in an effort to scare and intimidate PLAINTIFF.

33. For example, and by no means an exhaustive list, PLAINTIFF overheard Defendant MARTIN say, "**when the <u>other side of the world</u> starts <u>acting like monkeys</u>, I can't wait to exercise my right to shoot.**"

34. Upon information and belief, Defendant MARTIN's use of the term "monkeys" was in reference to African Americans.

35. Referring to African American individuals as monkeys is extremely offensive as it perpetuates the ignorant stereotype that African Americans descended from monkeys and are less than their Caucasian counterparts.

36. Upon information and belief, Defendant MARTIN was referring to Africa when he said "the other side of the world."

37. Therefore, Defendant MARTIN communicated that he was excited to shoot African American individuals.

38. By way of further example, and by no means an exhaustive list, PLAINTIFF heard Defendant MARTIN refer to African Americans as "**looters**."

39. Specifically, Defendant MARTIN stated that he wanted the "**looters**" to start rioting again so he could "**shoot them and not go to jail**" and that he "**just needed one reason to shoot them**."

40. Upon information and belief, Defendant MARTIN's use of the term "them" referred to African American individuals.

41. Upon information and belief, Defendant MARTIN's use of the term "looters" referred to African American individuals.

42. Upon information and belief, Defendant MARTIN believed he would not go to jail because he is Caucasian and privileged.

43. These comments made PLAINTIFF feel extremely uncomfortable and fearful for her safety.

44. Additionally, Defendant MARTIN frequently referenced police brutality towards African Americans around PLAINTIFF.

45. By way of example, and by no means an exhaustive list, one time during PLAINTIFF's employment, Defendant MARTIN bragged to PLAINTIFF that he watched a video of an African American woman who was shot by the police ten times.

46. By way of further example, on another occasion, while PLAINTIFF and her fellow employees were in the cafeteria, Defendant MARTIN told a story of an African American woman who was assaulted by the Chichester County Police Department.

47. While telling said story, Defendant MARTIN referred to African Americans as "**annoying ass people**."

48. When PLAINTIFF heard this, she immediately confronted Defendant MARTIN and asked him why he thought it was acceptable to refer to African American individuals that way.

49. Defendant MARTIN did not take accountability for his words.

50. Instead, Defendant MARTIN looked to the other employees, expecting the employees to laugh in agreement with him.

51. When Defendant MARTIN realized that none of the other employees agreed with his words, Defendant MARTIN said he was "joking."

52. Although PLAINTIFF wanted to report Defendant MARTIN's conduct, PLAINTIFF's coworker, Cassandra Madison, African American, told CLAIMANT not to report Defendant MARTIN because "this is just the way it is around here," referring to Defendant TS's prior refusal to remedy its discriminatory work environment.

53. Based on her conversation with Ms. Madison, PLAINTIFF reasonably believed that if she reported Defendant MARTIN's conduct, she would be retaliated against and no remedial action would be taken.

54. On another occasion, PLAINTIFF overheard Defendant MARTIN state that he "doesn't understand the goals of these groups," referring to groups aimed at eradicating white supremacy such as Black Lives Matter.

55. Thereafter, Defendant MARTIN's discriminatory conduct escalated.

56. On September 28, 2021, PLAINTIFF was out of work because she was receiving her COVID-19 vaccine.

57. While PLAINTIFF was out of work, Defendant MARTIN sent CLAIMANT a message via "TEAMS" of a flag reading, "**Join or Die**."

58. Upon information and belief, in modern times, "Join or Die" references alt-right conspiracy theories associated with racism and bigotry.

59. PLAINTIFF was shocked by Defendant MARTIN's outward display of racism.

60. In response, PLAINTIFF messaged Defendant MARTIN, "join or die?? What was that suppose [sic] to mean and why was it even sent to me."

61. On September 29, 2021, PLAINTIFF called Defendant BURCHETT of Defendant PS to report Defendant MARTIN's racially discriminatory conduct.

62. However, Defendant BURCHETT did not answer.

63.  Instead, PLAINTIFF spoke with Nick (last name unknown), Recruiter for Defendant PS, and told him of the discriminatory conduct she endured at the hands of Defendant MARTIN.

64. Upon information and belief, Nick (last name unknown) relayed PLAINTIFF's message regarding Defendant MARTIN's racially discriminatory conduct to Defendant BURCHETT.

65. Later that day, Defendant BURCHETT returned PLAINTIFF's phone call and told her that she would reassign PLAINTIFF to a different employer.

66. During this phone call, PLAINTIFF asked Defendant BURCHETT for Defendant PS's anti-discrimination policy.

67. However, Defendant BURCHETT never provided PLAINTIFF with a copy.

68. Upon information and belief, Defendant PS did not supply PLAINTIFF with a copy of its anti-discriminatory policy because it did not have one.

69. Despite telling PLAINTIFF that she would reassign her to a new position by October 1, 2021, Defendant BURCHETT never contacted PLAINTIFF.

70. When PLAINTIFF did not hear from Defendant BURCHETT regarding her reassignment, she called and texted Defendant BURCHETT.

71. All of PLAINTIFF's communications went unanswered by Defendant BURCHETT.

72. After reporting Defendant MARTIN's racially discriminatory conduct, PLAINTIFF never heard from either Defendant PS or Defendant TS regarding employment.

73. Given Defendants' failure to respond to PLAINTIFF, PLAINTIFF was terminated around September 29, 2021.

74. Based upon Defendants' history of failure to initiate policies to correct the ongoing discrimination and harassment, and because Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages as against all the Defendants, jointly and severally.

75. At all times Defendants have failed to initiate anti-discrimination policies such that Defendants should be held to a strict liability standard.

76. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

77. As a result of Defendants' conduct, PLAINTIFF was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

78. As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed emotionally and physically distressed.

79. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation to which such employment entailed.

80. PLAINTIFF also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

81. PLAINTIFF has further experienced severe emotional and physical distress.

82. At all material times, Defendants refused to investigate and take appropriate remedial action in response to PLAINTIFF's reports and complaints of discrimination, harassment and hostile work environment.

83. At all material times, Defendants refused to initiate any corrective action.

84. Defendants discriminatory conduct was severe and pervasive, and created a hostile work environment for PLAINTIFF.

85. The above are just some examples of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF.

86. PLAINTIFF claims a pattern and practice of discrimination, claims continuing violations, and makes all claims herein under the continuing violations doctrine.

87. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

## COUNT I
## DISCRIMINATION
## UNDER 42 U.S.C SECTION 1981
### (brought by Plaintiff against All Defendants)

88. Plaintiff, Chantel Hatton, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42 U.S.C. §1981.

90. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

91. Under Section 1981 both employers and individual employees can be liable for discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001) ("Although claims against individual supervisors are not permitted under Title VII, this court has found individual liability under § 1981 when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.") Al-Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3d Cir. 1986 ("employees of a corporation may become personably liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable.")

92. Defendants violated Section 1981 by intentionally discriminating against the Plaintiff in a serious tangible way with respect to his compensation, terms, conditions, and/or privileges of employment.

93. Plaintiff's protected characteristic (race) were a determinative or motivating factor in Defendants' employment actions.

94. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiffs are pretextual and can readily be disbelieved.

95. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may have also motivated Defendants' actions against Plaintiff.

96. Defendants acted with the intent to discriminate.

97. Defendants acted upon a continuing course of conduct.

98. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

99. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**UNDER 42 U.S.C. SECTION 1981**
**(brought by Plaintiffs against All Defendants)**

100.     Plaintiff, Chantel Hatton, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101.     The standards for a hostile work environment claim are identical under Title VII and Section 1981.

102.     While the standards of liability are identical under Title VII and Section 1981, there is a major difference in the coverage of the two provisions: under Title VII, only employers can be liable for discrimination in employment, but under Section 1981, individuals, including other employees, can be liable for racial discrimination against an employee.

103.     Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics.

104.     Defendants' conduct was not welcomed by Plaintiff.

105.     Defendants' conduct was so severe and/or pervasive that a reasonable person in Plaintiff's positions would find the work environment to be hostile or abusive.

106.     Plaintiff believed her work environment was hostile and abusive as a result of Defendants' conduct.

107.     As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status.

108.     Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

109.     Defendants acted upon a continuing course of conduct.

110.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**RETALIATION**
**UNDER 42 U.S.C. SECTION 1981**
**(brought by Plaintiff against All Defendants)**

111.     Plaintiff, Chantel Hatton, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

112.    The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

113.    The legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim.

114.    The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981.

115.    Here, Defendants retaliated against Plaintiff because of her protected activity under Section 1981.

116.    Plaintiff was acting under a reasonable, good faith belief that her, or someone else's, right to be free from discrimination on the basis of race was violated.

117.    Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

118.    There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

119.    Defendants acted upon a continuing course of conduct.

120.    Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the usually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

121.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**DISCRIMINATION**
**UNDER TITLE VII**
**(against Corporate Defendants only)**

122.     Plaintiff, Chantel Hatton, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

123.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

124.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

125.     Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions of employment because of Plaintiff's race.  Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

126.     Plaintiff's protected characteristics played a determinative factor in Defendants' decisions.

127.     Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

128.     Alternatively, Plaintiff's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

129.     Defendants acted with the intent to discriminate.

130.     Defendants acted upon a continuing course of conduct.

131.     Defendants acted with the intent to discriminate against Plaintiff because of her race.

132.     Defendants wrongfully terminated Plaintiff, in violation of Title VII, solely or in part, because of her race.

133.     Defendants wrongfully terminated Plaintiff, in violation of Title VII solely or in part because Plaintiff is African American.

134.     As a result of the Defendants PS and TS' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT V**
**HOSTILE WORK ENVIRONMENT**
**UNDER TITLE VII**
**(against Corporate Defendants only)**

135.    Plaintiff, Chantel Hatton, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

136.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

137.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

138.    Respondent superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

139.    Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

140.    The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

141.    Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally

protected class (African American) believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

142.   Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

143.   Racially-charged language and conduct filled the environment of Plaintiff's work area.

144.   Defendants PS and TS, and their supervisory employees, knew that the racially-charged language and conduct filled Plaintiff's work environment.

145.   Racially-charged language and conduct occurred on an almost if not daily basis.

146.   Racially-charged language and conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

147.   Plaintiff subjectively regarded the racially-charged language and conduct as unwelcome and unwanted and objectively opposed the conduct.

148.   The conduct was both severe and pervasive.

149.   The conduct was emotionally damaging and humiliating.

150.   The conduct unreasonably interfered with Plaintiff's work performance.

151.   The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

152.   Defendants PS and TS, and their supervisory employees, provided a futile avenue for complaint.

153.   Defendants PS and TS, and their supervisory employees, acted upon a continuing course of conduct.

154.     As a result of Defendants PS and TS, and their supervisory employees', violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VI**
**RETALIATION**
**UNDER TITLE VII**
**(against Corporate Defendants only)**

155.     Plaintiff, Chantel Hatton, repeats and realleges every allegation made in the above paragraphs of this complaint.

156.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

157.     Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

158.     Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a

freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

159.     Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

160.     "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); and Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

161.     An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class."

162.     Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

163.     Here, Defendants PS and TS, and their supervisory employees, discriminated against Plaintiff because of her protected activity under Title VII.

164.     Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of race was violated.

165.     Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

166.     Defendants PS and TS, and their supervisory employees, engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

167.     There was a causal connection between the Defendants PS and TS, and their supervisory employees, materially adverse actions, and Plaintiff's protected activity.

168.     Defendants PS and TS, and their supervisory employees, actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

169.     Defendants PS and TS, and their supervisory employees, acted upon a continuing course of conduct.

170.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendants PS and TS, and their supervisory employees, actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants PS and TS's supervisory employees' antagonism and change in demeanor toward Plaintiff after Defendants PS and TS, and their supervisory employees, became aware of Plaintiff's protected activity.

171.     As a result of the Defendants PS and TS, and their supervisory employees', violations of the PHRA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life,

humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT VII
## DISCRIMINATION
## UNDER PHRA § 955
## (against all Defendants)

172.     Plaintiff, Chantel Hatton, hereby repeats and realleges every allegation made in the above paragraphs of this complaint.

173.     Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

174.     Plaintiff will seek leave to amend this complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## COUNT VIII
## RETALIATION
## UNDER PHRA § 955
## (against all Defendants)

175.     Plaintiff, Chantel Hatton, hereby repeats and realleges every allegation made in the above paragraphs of this complaint.

176.     Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

177.     Plaintiff will seek to amend this complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out

any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT IX**
**DISCRIMINATION**
**UNDER PHRA – AIDING AND ABETTING**
**(against Defendants MARTIN and BURCHETT only)**

178.     Plaintiff, Chantel Hatton, repeats and realleges every allegation made in the above paragraphs of this complaint.

179.     Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

180.     Plaintiff will seek to amend her complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**JURY DEMAND**

PLAINTIFF requests a jury trial on all issues to be tried.

**DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Tova L. Rabin*
Tova L. Rabin, Esq.
1835 Market Street
Suite 2950
Philadelphia, PA 19103
tova@dereksmithlaw.com
267-332-1692

August 15, 2022